UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
FRANK BUONANOTTE, et al.,

                           Plaintiffs,

           -against-

SHARI NOONAN, Acting Commissioner of
New York State Office of Alcoholism and
Substance Abuse Services, in her individual capacity
and HENRY F. ZWACK, Executive Deputy
Commissioner of New York State Office of
Alcoholism and Substance Abuse Services,
in his individual capacity

                        Defendants.
----------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 07-2100

(Wexler, J.)

       JASPAN SCHLESINGER HOFFMAN LLP
       BY: LAUREL R. KREITZING, ESQ.
       Attorneys for Plaintiffs
       300 Garden City Plaza
       Garden City, New York 11530

       ANDREW M. CUOMO, ATTORNEY GENERAL OF THE STATE OF NEW YORK
       BY: RALPH PERNICK, ESQ., ASSISTANT ATTORNEY GENERAL
       200 Old Country Road Suite 460
       Mineola, New York 11501-4241

WEXLER, District Judge

      Plaintiffs commenced this lawsuit alleging that actions taken by Defendants in connection with Plaintiffs' rights to offer alcohol and substance abuse services and housing violated their civil rights. The individual Plaintiff is Frank Buonanotte, a resident of Suffolk County who is the Chief Executive Officer of the Plaintiff corporate entities. These corporations are seven entities operating under names that include the name "Crossings," as well as six entities operating under names including the name "Woodfield." Named as Defendants are two individuals. Defendant

1

Shari Noonan was, at all relevant times, the Acting Commissioner of New York State Office of Alcoholism and Substance Abuse Services ("OASAS") and Defendant Henry Zwack was, at all relevant times, that agency's Executive Deputy Commissioner.

This court's rulings on motions to dismiss and for summary judgment left two civil rights claims for trial. Those claims were based upon the theories that Plaintiffs were denied their rights to Due Process of Law and Equal Protection. A trial has been held, and Defendants have moved, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure ("Rule 50(a)"), for judgment as a matter of law. The court has granted that motion and has found, as required by Rule 50(a), that "a reasonable jury would not have a legally sufficient evidentiary basis" to find in favor of the Plaintiffs on any claim. This memorandum and order sets forth the reasons for the dismissal.

## DISCUSSION

I.  There Was No Proximate Cause as a Matter of Law

Each of Plaintiffs' claims hinged on the theory that the acts of Defendants resulted in the shutting down of Plaintiffs' businesses. As noted, the Defendants named herein were the Acting Commissioner, and the Deputy Executive Commissioner of OASAS. The testimony at trial established, however, that it could not have been the act of any named Defendant that led to the demise of Plaintiffs' businesses. Specifically, it became clear that the single reason that Plaintiffs were unable to operate their businesses was because of the actions of a state agency that was not named as a Defendant, and had nothing to do with the OASAS proceedings. That agency was the Medicaid Fraud Control Unit of the New York State Attorney General's Office ("Medicaid").

The evidence at trial established that on October 6, 2005 (two months prior to the commencement of any OASAS action with respect to Plaintiffs' businesses) Medicaid requested that the New York State Department of Health withhold 50% of the future Medicaid payments

2

submitted by Plaintiffs. The testimony made clear that Crossings was crippled by the withholding of these payments. On December 22, 2005, (also prior to any OASAS action) Medicaid made the decision to withhold 100% of Crossings' payments. It was that action, and not any OASAS proceeding, that effectively put the Plaintiffs out of business.

Thus, the testimony at trial made clear that the only rational decision that could have been reached by a jury is that Plaintiffs went out of business, not because of the revocation of their OASAS granted operating certificates, or any action of OASAS, but solely because of the decision made by Medicaid to reduce and, eventually entirely cut off Plaintiffs' Medicaid funding.

Significantly, no Medicaid representative was named as a Defendant. Additionally, counsel made clear that there was no claim of any conspiracy among the named Defendants and Medicaid. Since it was the act of a non-Defendant state agency that led to the demise of Plaintiffs' businesses, and those acts took place: (1) before OASAS issued any order revoking Plaintiffs' operating certificates; (2) before commencement of OASAS receivership proceedings, and, (3) before OASAS issued any notice of suspension, no denial of Plaintiffs' civil rights by OASAS could have been the proximate cause of Plaintiffs' damage. Accordingly, the court could not submit the Plaintiffs' civil rights claims to the jury.

Even if a rational jury could have found proximate cause based upon the action of either named Defendant, the court would nonetheless have dismissed the civil rights claims for the reasons set forth below.

1. Due Process Claims

A. The Pleadings

Plaintiffs' due process claims were inartfully pled and tried. As to the pleadings, there was an initial and amended complaint. The initial complaint set forth, inter alia, two separately stated

3

due process claims. The first was denominated as a claim for a "Violation of Due Process," and set forth facts relating to the denial of a hearing. The second due process claim, entitled "Violation of Substantive Due Process," also set forth facts regarding the failure to provide Plaintiffs with a hearing, and further alleged that the conduct of Defendants was morally wrong. Thus, the initial complaint clearly set forth two separate due process claims: (1) for denial of procedural due process and (2) for denial of substantive due process.

Plaintiffs' amended complaint did not separately allege denial of Plaintiffs' procedural and substantive due process rights. Instead, it set forth a single claim of a due process violation. That claim states only that Defendants' conduct was "arbitrary, irrational" and "unconscionable." This court noted in its decision on the motion to dismiss that such a claim appeared to set forth a claim only of a substantive due process violation. The parties' briefs on that motion, however, addressed the claim as procedural in nature, and that is how it was analyzed.

Prior to trial, Plaintiffs submitted a trial memorandum of law stating that claims for both procedural and substantive due process violations were to be tried. In accord with that position, that is how the court will assess the proof. As discussed below, neither claim was supported by facts sufficient to allow consideration by a jury.

1. Procedural Due Process

Plaintiffs' Procedural Due Process claim alleges that Plaintiffs possessed Constitutionally protected property interests in: (1) operating certificates issued by OASAS and, (2) their interest in continuing their businesses. The reason for alleging these two separate property rights was that only two of the named Plaintiffs held operating certificates. To bring the remaining Plaintiffs within the scope of a due process claim, Plaintiff alleged a more general property right of "the right to conduct business."

As a threshold matter, the court holds, as a matter of law, that it was only the two Plaintiff entities that held operating certificates that had a Constitutionally protected property right. The right alleged as to the other Plaintiffs was nothing more than a general right to do business. Such a right is simply too broad to support a claim of entitlement necessary to find a protected property right. Since the other Plaintiffs had no such protected right there was no basis upon which to submit their claims to the jury. As to the two Plaintiffs that the court has found to have possessed protected rights, the court finds, based upon the evidence presented at trial, that no rational jury could have concluded that there was a deprivation of those rights without procedural due process of law.

The record was replete with references to notices given, and hearings held in accord with the New York State Mental Hygiene Law in connection with the OASAS decision to revoke the operating certificates. Specifically, the testimony at trial established that OASAS identified in excess of one hundred state law violations committed by Plaintiffs. In response to those violations, OASAS commenced two separate lines of proceedings against Plaintiffs. First, OASAS pursued a final revocation of the Crossings Operating Certificates and, second, OASAS pursued receivership proceedings. The OASAS revocation proceedings were administrative in nature. Those proceedings were commenced on December 21, 2005, with service of a "Notice of Intent" to revoke the Crossings' certificates. That notice advised Crossings of the right to request a hearing and submit comments. Crossings submitted comments on December 26, 2005, and January 11, 2006. On January 20, 2006, OASAS issued an Order of Revocation, which order gave OASAS the right to commence Receivership Proceedings in the State Court. Like the Notice of Intent, the Order of Revocation advised Crossings of the right to request an administrative hearing, which Crossings did request.

The Receivership Proceedings allowed by the January 20, 2006, Order of Revocation were commenced in the New York State Court on January 23, 2006. The papers submitted in support of the proceeding indicated that the receivership was requested because of the numerous outstanding violations, and that the patients at the Crossings facilities could not be immediately transferred to a different facility. On February 23, 2006, OASAS was appointed as Receiver for the Crossings facilities. The receivership was continued until June 12, 2006, when it was terminated by an order of the State Court. That order noted that the receivership was no longer necessary because all patients had either completed treatment or had been transferred to different facilities.

At the same time that the Receivership proceedings were ongoing, the revocation proceedings continued in the OASAS administrative setting. On February 14, 2006, OASAS acted to suspend the Crossings operating certificates for a thirty day period. Like every other administrative action, this action was supported by documents showing numerous violations of law, and gave Crossings notice and the right to request a hearing. The administrative hearing on the OASAS revocation proceeding was held on March 6 though March 8, 2006. Crossings was represented by counsel at the hearing, but presented no witnesses. The OASAS administrative hearing officer memorialized his findings in a Report and Recommendation dated September 29, 2006. That report recommended that the decision to revoke be upheld, that Crossings cease operating several centers, and imposed fines for 168 documented violations of statutes and regulations. The decision of the hearing officer was reviewed by OASAS and was adopted by the Agency on November 29, 2006. Crossings sought no further appeal of the OASAS decision.

The testimony at trial, as detailed above, established conclusively that OASAS acted pursuant to state procedures, and gave Plaintiffs fair notice and opportunities to be heard in accord

with those procedures. In each instance where OASAS acted to seek immediate relief, it did so because of the danger to the health and welfare of patients that the Crossings' violations presented.

Because the final decision to revoke was not reached until September of 2006 (the date of the OASAS hearing officer's report), Plaintiffs argued that, despite OASAS adherence to state procedures, Plaintiffs were nonetheless denied procedural due process. Plaintiffs' position was that the procedures allowed were futile because by the time they had been afforded the opportunity to be heard, they had already been stripped of their businesses. Because, as discussed above, trial testimony established conclusively that it was the independent acts of Medicaid that led to the shutting down of Plaintiffs' business, and not any act of OASAS, this theory could not proceed to the jury.

2. Substantive Due Process

The case for a Substantive Due Process violation was similarly lacking. The only testimony offered in support of this claim related to a meeting held in Albany in October of 2005. At that meeting, and in correspondence, Defendant Zwack told Buonanotte to cease his efforts to take over the operation of certain treatment facilities being closed by OASAS. Even accepting Plaintiffs' version of these events, they do not rise to the level required to support a claim of a substantive due process violation. Because there was no testimony that would have supported a jury finding that Defendants' actions were "so outrageously arbitrary as to constitute a gross abuse of governmental authority," Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999), the court dismissed the Substantive Due Process claim.

3. Equal Protection

With respect to the Equal Protection claim, the court's prior opinions made clear the level

7

of proof that would be required at trial to prevail on such a claim. Thus, the court noted that where, as here, a plaintiff alleges disparate treatment based upon ill will or without rational basis, the plaintiff must show treatment different from other similarly situated individuals. Harlen Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). Additionally, where a plaintiff claims to be a part of a "class of one," "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir.2005); see Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006). The test of similarity is a showing that: "(I) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." Neilson, 409 F.3d at 105. The court noted that while similarity is generally a factual issue for a jury, that rule was "not absolute," and a claim could be subject to dismissal by the court "where no rational jury could find similarity." Harlen, 273 F.3d at 499 n.2. This is such a case.

In support of the claim that Plaintiff was subject to treatment different from other similarly situated individuals and/or treatment centers, he offered no real comparator. Indeed, when asked whether there were any other entities that were *not* similarly situated, he could cite no such entity, apparently taking the position that all treatment centers doing business with OASAS were similarly situated.

The court's review of the evidence reveals that there was no evidence presented that would allow a rational jury to find an equal protection violation. On the contrary, the only evidence of other treatment centers that was presented to the jury showed substantial dissimilarity. Evidence

presented with respect to such centers showed marked differences in the types and numbers of state law violations, and the OASAS response thereto. Contrary to Plaintiffs' position, the only rational conclusion to be reached from the evidence was that OASAS acted differently with respect to different levels, and types of problems at different facilities. There was no evidence of any disparate treatment of Plaintiff when compared with other similarly situated entities, since there were no such entities identified. Accordingly, the court dismissed the equal protection claims.

## CONCLUSION

For the foregoing reasons, the Court dismissed the Plaintiffs' claims at the close of the Plaintiffs' case. The Clerk of the Court is directed to terminate any outstanding motions, to enter judgment in favor of Defendants, and to close the file in this case.

SO ORDERED

                                                                    _____/s/_____
                                                                    LEONARD D. WEXLER
                                                                    UNITED STATES DISTRICT JUDGE

Central Islip, New York
October 13, 2009